**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| THE CINCINNATI SPECIALTY, UNDERWRITERS INSURANCE COMPANY, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:11-CV-357 |
| v. | ) | |
| | ) | |
| DMH HOLDINGS, LLC d/b/a COURTYARD APARTMENTS, et al. | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

*****************************

| | | |
|---|---|---|
| DMH HOLDINGS, LLC d/b/a COURTYARD APARTMENTS, | ) ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE, COMPANY, | ) ) ) | |
| | ) | |
| Counter-Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on: (1) Plaintiff's Third Motion to Dismiss or, in the Alternative, Motion to Strike Counterclaim of Defendant DMH Holdings, LLC d/b/a Courtyard Apartments, filed by Plaintiff, The Cincinnati Specialty

Underwriters Insurance Co., on October 18, 2012; and (2) DMH Holdings, LLC d/b/a Courtyard Apartments' Motion to Strike Cincinnati Specialty Underwriters' Reply in Support of its Third Motion to Dismiss DMH Holdings' Counterclaim, filed on November 15, 2012. For the reasons set forth below, the motion to dismiss (DE# 109) is **GRANTED**. Accordingly, Defendant's Counterclaims are **DISMISSED**. The motion to strike (DE# 118) is **DENIED as moot**.

BACKGROUND

Plaintiff, The Cincinnati Specialty Underwriters Insurance Co. ("CSU"), is a corporation organized under the laws of the State of Delaware, with its principal place of business in Fairfield, Ohio. (*See* Countercl. ¶ 2 (incorporating the relevant parties by reference to CSU's Fourth Am. Compl.)).[1] Defendant, DMH d/b/a Courtyard ("DMH" and "Courtyard" respectively) is a limited liability company organized under the laws of the State of Indiana with its principal place of business in Stamford, Connecticut. *Id*.

CSU issued a policy of commercial insurance (the "Policy") to DMH under policy number CSU0021042 providing general commercial liability coverage to the named insured, Courtyard, for the period

_____

[1] In light of the numerous pleadings that have been filed in this litigation, the Court will reference various pleadings to give context to this matter. However, pursuant to the applicable standard of review, for purposes of ruling on the Motion to Dismiss and/or Strike that is the subject of this Opinion and Order, the Court accepts the well-pled factual allegations of DMH's counterclaim as true and will draw all reasonable inferences therefore in favor of DMH.

of August 10, 2010 to August 20, 2011. (Countercl. ¶ 4). On March

12, 2011, an incident occurred on Courtyard premises wherein Tyler

Brownlee ("Brownlee") was shot and killed. (Fourth Am. Compl. ¶¶

16-18). As a result of this incident, Brownlee's estate filed a

complaint against Courtyard in Indiana state court. (*Id*. at ¶ 19).

CSU filed a Complaint for Declaratory Judgment with this Court

on September 6, 2011, seeking to establish the applicable policy

limit and the scope of coverage under the Policy in regards to the

state court lawsuit filed against Courtyard by Brownlee's estate.

Litigation ensued. CSU filed a Fourth Amended Complaint, seeking a

declaratory judgment stating:

> (1) That CSU's indemnity obligations to Courtyard for the
> Lawsuit are subject to a liability insurance limit of one
> hundred thousand dollars ($100,000.00);
>
> (2) That CSU does not provide coverage for any punitive
> damages which may be awarded against Courtyard in the
> [lawsuit between Courtyard and Brownlee's estate];
>
> (3) That CSU does not provide coverage for the
> allegations against Courtyard of reckless, willful,
> wonton, malicious, or oppressive conduct on the part of
> Courtyard;
>
> (4) That CSU does not have a duty to defend or indemnify
> Weiss for the lawsuit; and
>
> (5) Additionally and/or alternatively, if CSU does have
> a duty to indemnify Weiss, that CSU's obligations to
> Weiss for the Lawsuit are subject to the same one hundred
> thousand dollar ($100,000) liability limit as Courtyard.

(DE# 103, p.8).

DMH filed its Answer and Affirmative Defenses, along with a Counterclaim for Declaratory Judgment and Breach of Contract. In its counterclaim for declaratory judgment, DMH seeks a declaratory judgment stating:

> (A) [T]hat the endorsement entitled "Exclusion/Assault or Battery with Limited Optional Coverage" is inapplicable to the factual circumstances surrounding the death of [Brownlee];
>
> (B) [T]hat the policy limits for [Brownlee's] death are One Million Dollars ($1,000.000.00) pursuant to [the Policy] and that said Policy provides coverage for all claims made against Courtyard in the [lawsuit between Courtyard and Brownlee's estate];
>
> (C) [T]hat CSU is obligated to provide coverage for an award of punitive damages against Courtyard, insofar as CSU's conduct in this action resulted in the underlying plaintiffs' Second Amended Complaint, seeking, *inter alia*, punitive damages;
>
> (D) [An award of] additional declaratory relief as shall be found to be appropriate in the circumstances including, but not limited to, attorney fees and costs.

(Countercl., p. 17).

In its counterclaim for breach of contract, DMH alleges that CSU issued a policy of commercial insurance which required CSU to pay up to One Million Dollars ($1,000,000.00) pursuant to the terms of the Policy. (*Id*. at ¶¶ 30-31). DMH further alleges that CSU took the position that only limited option coverage of One Hundred Thousand Dollars ($100,000.00) was available without performing an adequate investigation with CSU's financial interest being placed

ahead of its insured, Courtyard. (*Id*. at ¶ 18). Specifically, DMH

alleges that:

> CSU has breached its contract of insurance with Courtyard
> by *failing to acknowledge* that it is required to pay up
> to One Million Dollars ($1,000,000.00) in liability
> insurance proceeds for the claims made against Courtyard
> in the [lawsuit between Courtyard and Brownlee's estate]
> and by *failing to perform an adequate investigation*
> before taking the position that the limit available was
> One Hundred Thousand Dollars ($100,000.00) and/or that
> indemnity coverage was limited by allegations of
> reckless, willful, wanton, malicious, and oppressive
> conduct…CSU has further breach[ed] its contract of
> insurance with Courtyard by *placing the issues raised in
> this declaratory judgment action at issue prematurely*.

(*Id*. at ¶¶ 32-33 (emphasis added)). Finally, DMH alleges that it

has been damaged and has incurred substantial attorney fees as a

result of CSU's breach and in connection with its defense against

CSU's declaratory judgment action. (*Id*. at ¶ 34).


DISCUSSION

Motion to Dismiss/Strike

Standards

Federal Rule of Civil Procedure 12(b)(6) provides for

dismissal for "failure to state a claim upon which relief can be

granted." When considering a motion to dismiss a counterclaim, a

court employs the same standard that applies to claims in the main

complaint. *Cozzi Iron & Metal Inc. v. U.S. Office Equip., Inc.*, 250

F.3d 570, 574 (7th Cir.2001). Thus, a court must accept all of the

well-pled factual allegation in the counterclaim as true and

construe all reasonable inferences therefrom in the light most favorable to the non-moving party. *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007)(*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, (2007)). To survive a motion to dismiss under Rule 12(b)(6) a claim must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555.

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter…(1) on its own; or (2) on motion made by a party." Motions to strike are disfavored because they generally serve only to delay proceedings. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). However, a motion to strike that expedites litigation by removing "unnecessary clutter" should be granted. *Id.; see also Lincoln Nat. Corp. v. Steadfast Ins. Co.*, No. 1:06-CV-58, 2006 WL 1660591, *2 (N.D. Ind. June 09, 2006) ("[R]epetitious and unnecessary pleadings, such as a counterclaim that merely restates an affirmative defense, or which seeks the opposite effect of the complaint, should be stricken regardless of whether prejudice has been shown.").

Counterclaim I – Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested parting seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The purpose of declaratory judgment is to clarify the legal relationship between parties to a dispute and to alleviate unnecessary uncertainty surrounding litigation. *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987). Further, it is within the discretion of the district court to grant or deny declaratory relief. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). Consequently, if the Court finds that a declaratory judgment action serves no useful purpose, it may dismiss the action. *Id*. Moreover, a court may refuse to entertain a declaratory judgment action that merely seeks to determine issues already being litigated. *Lincoln Nat. Corp.,* 2006 WL 1660591 at *2.

Under Rule 12(f), "the court may strike from a pleading…any redundant…matter." *See United States v. Zanfei*, 353 F. Supp. 2d 962, 965 (N.D. Ill. 2005) (providing that "repetitious and unnecessary pleadings" may be disposed of with a motion to strike). Indeed, a counterclaim that "merely restates an affirmative defense, or seeks the opposite effect of the complaint" should be

stricken. *Lincoln Nat. Corp.,* 2006 WL 1660591 at *2; *see also Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985) ("[W]hen one party to a contract seeks a declaration of the contract's meaning, another party's counterclaim seeking to enforce the contract is 'repetitious and unnecessary.'").

Thus, a counterclaim for declaratory judgment may be stricken for redundancy when the declaration sought by a defendant-counterclaimant is simply a reiteration of the defendant's affirmative defenses. *Lincoln Nat. Corp.,* 2006 WL 1660591 at *2. In *Lincoln Nat. Corp.*, the plaintiff brought an action for breach of an insurance contract against its insurer, the defendant. *Id*. at *1. In its answer, the defendant included a counterclaim for declaratory judgment that simply "repackaged" its affirmative defenses. *Id*. The court granted the plaintiff's motion to strike the defendant's counterclaim for declaratory judgment finding that the claim was redundant. *Id*. at *4. The court explained that the issues raised in the counterclaim were identical to the defendant's affirmative defenses, and consequently, a judgment on the plaintiff's breach of contract claim would resolve the issues raised in the defendant's counterclaim for declaratory judgment. *Id*. Therefore, the court found that the counterclaim added nothing to the litigation and should be stricken for redundancy. *See also McGrath v. Everest Nat. Ins. Co.*, 2:07 CV 34, 2009 WL 2508216 (N.D. Ind. Aug. 13, 2009) (striking a defendant's counterclaim for

declaratory judgment as redundant where the declaration sought in the counterclaim was already before the court via the defendant's affirmative defenses).

Furthermore, a counterclaim for declaratory judgment may be stricken as redundant when the counterclaim restates the issues that are already before the court by virtue of the complaint. *Zanfei*, 353 F. Supp. 2d at 965. In *Zanfei*, the United States sought an injunction to prevent the defendant from selling illegal tax shelters. *Id*. at 963. The defendant filed a counterclaim seeking a declaration that the tax shelters were legal. *Id*. The court held that a declaratory judgment was not appropriate because it would be "repetitious and unnecessary." *Id*. at 964. The court reasoned that the declaration sought by the defendant was simply the opposite of the relief sought in the complaint filed by the United States: the United States sought to have the tax shelters declared illegal, whereas the defendant sought to have them declared legal. *Id*. at 965. Accordingly, the court found that a declaratory judgment would be futile and that the defendant's declaratory judgment claim should be stricken because it was repetitious. *Id*.

In light these principles, the Court finds that Count I of DMH's counterclaim seeking a declaratory judgment should be stricken under Rule 12(f) because it is redundant.[2] In other words,

---

[2] CSU also sought to dispose of DMH's counterclaim for declaratory judgment via Rule 12(b)(6) for failure to state a claim upon which relief can be granted. CSU provided no Seventh Circuit precedent to support its Rule 12(b)(6) motion in regards to DMH's declaratory judgment claim. Rather, CSU

DMH's counterclaim for declaratory judgment seeks the opposite relief sought by CSU in its Fourth Amended Complaint. Similar to the relief sought by the defendants in *Lincoln Nat. Corp.* and *Zanfei*, DMH's redundant counterclaim is repetitious and unnecessary. A paragraph-by-paragraph comparison of the opposing declarations is illustrative.

First, CSU seeks a declaration that its "indemnity obligations to Courtyard for the Lawsuit are subject to a liability insurance limit of One Hundred Thousand Dollars ($100,000.00)." Alternatively, DMH seeks a declaration that "the policy limits for Mr. Brownlee's death are One Million Dollars ($1,000,000.00)" and "that the endorsement entitled 'Exclusion/Assault or Battery with Limited Optional Coverage' is inapplicable to the factual circumstances surrounding the death of Tyler Brownlee." Under the Policy, the Assault or Battery Exclusion either applies, and the applicable policy limit is $100,000.00, or, the Exclusion does not apply, and the applicable policy limit is $1,000,000.00. Thus, the opposing declarations are the exact opposite.

---

relies on a Third Circuit case for the proposition that "[a] counterclaim for declaratory relief may be dismissed as redundant where there is complete identity of factual and legal issues between the complaint and the counterclaim. Dismissal is justified in such cases on the theory that the counterclaim will become moot upon disposition of the complaint." *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 674 F. Supp. 2d 562, 566 (D. Del. 2009) (internal quotations omitted). The Court finds no clear guidance from Seventh Circuit precedent as to when a redundant counterclaim should be dismissed under Rule 12(b)(6), or alternatively, stricken under Rule 12(f). However, in the cases reviewed by the Court, the majority of Seventh Circuit district courts have disposed of redundant counterclaims via Rule 12(f). Regardless, because the Court finds ample grounds to strike DMH's counterclaim for declaratory judgment under Rule 12(f), the Court need not address CSU's motion to dismiss the counterclaim under Rule 12(b)(6).

Second, CSU seeks a declaration that it "does not provide coverage for any punitive damages which may be awarded against Courtyard in the Lawsuit." Alternatively, DMH seeks a declaration that "CSU is obligated to provide coverage for an award of punitive damages against Courtyard, insofar as CSU's conduct in this action resulted in the underlying Plaintiffs' Third Amended Complaint seeking, *inter alia*, punitive damages." These opposing declarations are also mirror images: either CSU is required to provide coverage for an award of punitive damages against DMH in the underlying state court lawsuit, or, it is not so required. Even if CSU caused the underlying plaintiffs to seek punitive damages against DMH, the declaration sought by DMH is still unnecessary because the Court will address that issue in ruling on the declaration sought by CSU.

Third, CSU seeks a declaration that it "does not provide coverage for the allegations against Courtyard of reckless, willful, wonton, malicious, or oppressive conduct on the part of Courtyard." Alternatively, DMH seeks a declaration that the "Policy provides coverage for all claims made against Courtyard in the Lawsuit related to the death of Tyler Brownlee." The language in the declaration sought by DMH (i.e. that CUS is liable for "all claims" against courtyard) is broader than the language of the declaration sought by CSU (i.e. that CSU is not liable for "reckless, willful, wonton, malicious, or oppressive conduct on the part of Courtyard"). However, the fact that DMH has phrased its

-11-

declaration in broader terms, does not change the fact that the
declaration is unnecessary and repetitious. CSU is not disputing
its obligation to provide coverage for every claim in the
underlying lawsuit, but only those that arise from Courtyard's
reckless, willful, wonton, malicious, or oppressive conduct.
Therefore, a declaration that CSU must provide coverage for "all
claims" made against DMH is unnecessary.

Accordingly, DMH's counterclaim for declaratory judgment is
redundant and should be stricken pursuant to Rule 12(f).


### Counterclaim II- Breach of Contract

When a federal court has jurisdiction based solely on
diversity of citizenship, the court must apply applicable state law
when making substantive decisions regarding the case. *Strachan v.
Nisbet*, 202 F.2d 216, 218 (7th Cir. 1953)(*citing Erie R. Co. v.
Tompkins*, 304 U.S. 64 (1938)); *See also Deckard v. Gen. Motors
Corp.*, 307 F.3d 556, 560 (7th Cir. 2002) ("Since this case arises
from the diversity jurisdiction of a federal court sitting in
Indiana, we apply Indiana contract law."). Under Indiana contract
law, a plaintiff must establish three elements to recover in a
breach of contract claim: (1) the existence of a contract; (2) a
breach of that contract by the defendant; and (3) damages suffered
by the plaintiff as a result of the defendant's breach. *Collins v.
McKinney*, 871 N.E.2d 363, 369 (Ind. Ct. App. 2007). Regarding the

-12-

second element, "breach of contract" is defined as the failure of one party to perform all of the obligations set forth in the governing contract. *Breeding v. Kye's Inc.*, 831 N.E.2d 188, 191 (Ind. Ct. App. 2005).

In the insurance context, "[c]ontracts of insurance are subject to the same rules of construction as are other contracts." *Jackson v. Jones*, 804 N.E.2d 155, 158 (Ind. Ct. App. 2004). When provisions of an insurance contract are unambiguous, those provisions are given their plain meaning and the policy should be enforced pursuant to its terms. *Haag v. Castro*, 959 N.E.2d 819, 824 (Ind. 2012).

In Count II of its counterclaim, DMH brings an action for breach of contract against CSU. However, DMH does not allege that CSU has breached any specific provision of Policy. Rather, DMH relies on an implied contractual duty placed upon insurers to investigate the facts underlying an insurance claim before refusing to defend the claim. This implied duty to investigate is discussed by the court in *Monroe Guaranty Insurance Co. v. Monroe*, 677 N.E.2d 620 (Ind. Ct. App. 1997) (which is cited by DMH in support of its action for breach of contract).

In *Monroe*, the plaintiff was an insurance company that maintained a workers' compensation insurance policy with the defendant, an employer. The plaintiff filed a declaratory judgment action seeking a declaration that it had no duty to defend the

defendant in an underlying lawsuit filed by an employee of the employer. *Id*. at 621. The plaintiff maintained that the underlying lawsuit involved allegations that the defendant intentionally injured the complaining employee, and consequently, the plaintiff had no duty to defend the underlying lawsuit because the governing insurance contract did not provide coverage for intentional injuries. *Id*.

The central issue in *Monroe* was whether an insurance company's duty to defend is based solely on the allegations contained in the complaint, or, whether the insurance company must look beyond the complaint when investigating the underlying factual circumstances. *Id*. at 622. Although *Monroe* never explicitly states than an insurance company has a duty to investigate before refusing to defend a claim, *Monroe* has been cited by Indiana courts for the proposition that "the insurer has a duty to conduct a reasonable investigation into the facts underlying the complaint *before it may refuse to defend the complaint*." *See e.g. Gallant Ins. Co. v. Oswalt*, 762 N.E.2d 1254, 1259 (Ind. Ct. App. 2002); *Hoosier Ins. Co. v. Audiology Found. of Am.*, 745 N.E.2d 300, 310 (Ind. Ct. App. 2001) (emphasis added).

The present case is distinguishable from *Monroe*. In the present case, DMH has not alleged that CSU refused to *defend* DMH in the underlying lawsuit. Rather, DMH alleges that CSU breached the Policy by "failing to acknowledge" a One Million Dollar

-14-

($1,000,000.00) policy limit, "failing to perform an adequate investigation" and "placing the issues raised in this declaratory judgment action at issue prematurely." DMH cites no authority, and the Court finds none, that suggests that these alleged failures and actions of CSU constitute a breach of any implied contractual duty under Indiana law. Indeed, there is a distinction between an insurance company's refusal to defend an insured (as discussed by the court in *Monroe*) and an insurance company's request for a declaratory judgment to establish an appropriate policy limit. In other words, the failures of CSU, as alleged by DMH, simply do not constitute a breach of any identifiable contractual duty that is implied by Indiana contract law.

Furthermore, the failures of CSU alleged by DMH do not constitute a breach of any express provision of the Policy at issue. As stated above, DMH points to no provision of the Policy that obligates CSU to acknowledge a specific policy limit or preform an adequate investigation prior to seeking a declaratory judgment to establish an applicable policy limit. Nor does DMH identify any provision of the Policy or legal authority to suggest that seeking a declaratory judgment constitutes breach of contract.[3]

---

[3] In fact, Indiana courts recognize a declaratory judgment action is appropriate to establish obligations under an insurance contract. *See Hoosier Ins. Co. v. Audiology Found. of Am.*, 745 N.E.2d 300, 310 (Ind. Ct. App. 2001) ("When an insurer questions whether an insured's claim falls within the scope of its policy coverage…the insurer has two options: (1) file a declaratory judgment action for a judicial determination of its obligations under the

Accordingly, DMH has not alleged any act or omission on the part of CSU that constitutes a breach of the Policy. Absent an allegation of breach, DMH cannot satisfy the elements to maintain a breach of contract action under Indiana law. Thus, even if all the factual allegations surrounding DMH's counterclaim for breach of contract are true, that claim still fails to state a claim on which relief can be granted. Therefore, Count II of DMH's counterclaim for breach of contract must be **DISMISSED**.

Counterclaim III – Stay

Count III of DMH's counterclaim requests a stay of the proceedings. CSU argues that this Count makes substantially the same request as the prior motions for stay (DE##'s 27, 73) and, therefore, should be stricken as redundant. In response, DMH asserts "the request for a stay is not redundant but is merely a request for continuation of the existing stay and should not be dismissed or stricken." (DE# 113, p. 14).

Putting aside whether a request for a stay is a proper counterclaim (since the parties did), there is no apparent use for Count III. Indeed, DMH has already filed a motion for stay and gotten relief, which continues to this date. Thus, keeping Count

policy; or (2) hire independent counsel to defend its insured under a reservation of rights."); *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 294 (Ind. Ct. App. 1997) ("By comparison, declaratory judgment is appropriate to construe a contract even in the absence of a breach.").

III around as a counterclaim is redundant and unnecessary. Accordingly, it is stricken.

Motion to Strike

DMH filed a motion to strike, arguing CSU raised new arguments in its reply brief not previously raised in the original brief and also that CSU made improper specific statements of fact regarding its investigation.

However, because the Court did not rely on the newly raised arguments or facts in ruling on the instant motion to dismiss, there is no need to delve into these issues. The motion is **DENIED as moot.**

CONCLUSION

For the reasons set forth above, the motion to dismiss (DE# 109) is **GRANTED**. Accordingly, Defendant's Counterclaims are **DISMISSED**. The motion to strike (DE# 118) is **DENIED as moot.**


DATED:  February 22, 2013          /s/RUDY LOZANO, Judge
                                   **United States District Court**